mmc

# FILED

JUL – 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

1  Josue Luis Ponce-Legaspi
2  Martinez Detention Facility
3  1000 Ward Street
4  Martinez, California 94553
5  Booking No.:# 2008008311
6
7  Petitioner

CV 08   MMC   3328   (PR)

8
9          United States District Court
10       for the Northern District of California
11

12  Josue Luis Ponce-Legaspi,      )    Case No.: _____
13                                  )
14              Petitioner,         )    Petition for a Writ
15          vs.                     )    of Habeas Corpus
16                                  )
17  Michael Chertoff, Secretary,   )    Date: May 12th 2008
18  United States Department of     )
19  Homeland Security,              )
20                                  )
21              Respondent.         )
22                                  )
23
24
25  This Petition for Writ of Habeas Corpus is made to the United States
26  District Court for the Northern District of California in pleading paper
27  form and not on the "standard form" provided by the court because the
28  use of the form renders the petition disordered, confusing, and unintelligible.
29  A petitioner that is represented by counsel is not bound to using the "standard
30  form" and as such the petitioner puts forth the claim that the doctrine

1  of equal protection should mandate that when the use of the "standard
2  form" renders a petition disordered and confusing or otherwise unintelligible,
3  a pro se petitioner should be permitted to submit the petition in pleading
4  paper form.
5
6  All of the pertinent information specified in the "standard form", including
7  basic information about the petitioner, condition and location of petitioners custody,
8  grounds for relief, and verification under penalty of perjury is included in the
9  pleading. In essence, the pleading presented by the petitioner for a writ
10 of habeas corpus is no different than what would have been presented by
11 the petitioner had the "standard form" been used. On this ground and the
12 protection afforded by the equal protection clause of the 14th Amendment of
13 the United States Constitution fore mentioned, the petitioner prays to be heard.
14
15 While the petitioner is in the actual custody of the Contra Costa County
16 Sheriff, the petitioner is also in the constructive custody of the United
17 States Department of Homeland Security through an immigration detainer. The
18 petitioner seeks relief specific to the immigration detainer placed on him by the
19 United States Department of Homeland Security, through this writ of habeas
20 corpus to the United States District Court for the Northern District of
21 California. As such, the above entitled court is the proper venue for relief
22 and a writ of habeas corpus is the proper vehicle. Malena vs Cook (1989) 490
23 U.S. 488, 104 L. Ed. 2d 540, 109 S. Ct. 1923.
24
25
26               Procedural Background
27
28 On April 19th 2008 the petitioner was arrested by the Pinole Police Department
29 during a routine traffic stop and subsequently charged with one count of
30 California Health and Safety Code § 11378 and one count of § 11379(a).

2

1  Bail has been set and while the petitioner would be in a better position
2  to secure private counsel, secure the testimony of witnesses, and make use of
3  his speedy trial rights — the petitioner is effectively denied the right to secure
4  his release on bail because of an immigration detainer that was placed on him
5  on April 22nd 2008.  No preliminary hearing has been set for the criminal case
6  and the petitioner, not being able to secure his release even if he were to post
7  bail, has been forced to waive his right to a preliminary hearing within 10
8  court days.
9
10 The petitioner puts forth the claim that his right to due process, protected under
11 the 5th Amendment of the United States Constitution, has been violated in that the
12 Contra Costa County Office of the Sheriff violated his right to not be a witness
13 against himself, also protected under the 5th Amendment, by securing information about
14 the place of his birth for the purpose of immigration enforcement without a proper
15 admonishment.  The resulting immigration detainer is a function of such unlawful
16 inquiry and as such his right to be free from unwarranted searches which is
17 protected by the 4th Amendment of the United States Constitution. Furthermore,
18 the petitioner also puts forth the claim that the resulting immigration detainer
19 prevents his ability to "make bail", secure his release from custody, and make use
20 of his resources to secure private counsel.  As such his rights protected under
21 the 6th and 8th Amendments of the United States Constitution are seriously
22 infringed upon if not foreclosed.
23
24
25                    Relief  Sought
26
27 The petitioner makes the claim that the immigration detainer placed on him
28 by the United States Department of Homeland Security is a product of an unlawful
29 search and at the very least violated his right to not be a witness against
30 himself.  As a direct result, the petitioner can not make use of bail

3

1 available to him nor use his resources under his control (but not available
2 to him from an in-custody position) to secure private counsel. The only
3 equitable relief proper is for the court to lift the immigration detainer
4 through a court order with leave for the United States Department of Homeland
5 Security to re-impose the detainer if and when the petitioner sustains a
6 felony conviction. The bail required of the petitioner by the State court is
7 enough to ensure the petitioner's appearance in court and if a conviction was
8 sustained for the court to remand the petitioner back into custody at which
9 time the United States Department of Homeland Security would have leave of
10 the court to re-impose the immigration detainer.

11

12

13                     Grounds for Relief

14

15          Petitioner's Booking "Interview" Violated His
16          5th Amendment Right to Not Be a
17                    Witness Against Himself

18

19 Upon booking the petitioner on April 19th 2008 by the Contra Costa County
20 Office of the Sheriff at the Martinez Detention Facility in Martinez, California
21 the petitioner was asked a variety of questions including his citizenship status and
22 country of birth. The Contra Costa County Office of the Sheriff operates
23 as an "information gathering" agency of the United States Department of Homeland
24 Security on a de facto basis. As such the petitioner should have been given
25 an admonishment that the response to the questions asked of him could be used
26 against him. Such an admonishment was not given and the petitioner puts
27 forth the claim that the immigration detainer is void and should be lifted
28 because it is the fruit of a poisonous tree.

29

30 Various state court decisions support the petitioners claim. The California

4

1  Court of Appeal in People vs. Morris held that a jail security inquiry was
2  reasonably likely to elicit an incriminating response and therefore require a
3  Miranda warning. People vs. Morris (1987) 192 CA3d 380, 237 CR 402.
4  The California Supreme Court in People vs. Rucker held that a booking
5  question constitutes an interrogation if it exceedes a legitimate need for information
6  and that, even if police were seeking a nontestimonial response, a booking response
7  that might be incriminating should not be admitted.

9  The right to refuse to speak with immigration officials or to answer any
10 questions about country of birth, nationality, immigration status, or manner of
11 entry into the United States has been held to be a right protected under the
12 5th Amendment of the United States by at least two Circuit Courts, including
13 the 9th Circuit. Bong Youn Choy vs. Barber (9th Cir. 1960) 279 F2d 642;
14 Estes vs. Potter (5th Cir 1950) 183 F2d 865. While the petitioner was
15 not asked questions by immigration officials directly, the questions were instead
16 asked by intake Deputies employed by the Contra Costa County Office of the
17 Sheriff acting as "de facto" immigration officials since the response to their
18 questions formed the basis of the subsequent immigration detainer. The 5th
19 Amendment rights of the petitioner were violated and the resulting immigration
20 detainer should be voided as an equitable remedy.

23          An Inquiry Into the Petitioners Citizenship
24          Status Without a Warrant Violates
25          the Petitioner's Rights Under
26          the 4th Amendment

28 An inquiry into a person's citizenship status is a regul[...]
29 be performed without a need for a warrant at [...]
30 equivalent, or a fixed checkpoint. A jail "booking [...]

1  of the forementioned places and is far in any adjudication resulting in a
2  conviction. An immigration inspection prior to a criminal conviction and not at
3  either a border, its functional equivalent, or a fixed checkpoint demands
4  a search warrant be issued on admissible probable cause.
5
6  An administrative warrant issued for a regulatory inspection need not be
7  supported by probable cause to believe that a violation of the regulation
8  has occurred. <u>Marshall vs. Barlows, Inc.</u> (1978) 436 US 307, 56 L. Ed.
9  2d 305, 98 S. Ct. 1816. However, if the inspection is based on
10  probable cause to believe a criminal violation has occurred, an administrative
11  warrant will not suffice, and the requirements of a criminal search warrant
12  must be satisfied. <u>Michigan vs. Tyler</u> (1978) 436 US 499, 56 L. Ed. 2d
13  486, 98 S. Ct. 1942; <u>Salwasser Mfg. Co. vs. Municipal Court</u> (1978) 94
14  CA 3d 223, 156 CR 292. Both the United States Supreme Court and
15  the California Court of Appeal are in accord on this point.
16
17  To use the information gathered at a jail of a criminal defendant absent of
18  a conviction or a warrant is a violation of the 4th Amendment when such
19  information is used against the criminal defendant. <u>Rakas vs. Illinois</u> (1978)
20  439 US 128, 58 L. Ed. 2d 387, 99 S. Ct. 421. A person under arrest
21  in a state action and booked into a county jail has a reasonable expectation
22  that the "county jail" will not be used as an immigration checkpoint
23  since that is not the function of a "county jail" and no conviction has
24  been sustained. <u>U.S. vs. Jacobson</u> (1984) 466 US 109, 80 L. Ed. 2d
25  85, 104 S. Ct. 1652.
26
27  To use a pretrial detention as the functional equivalent of a border or
28  fixed checkpoint when that pretrial detention is at a county facility and the
29  grounds for the pretrial detention are only state charges is unconstitutional.
30  The reasonable inmate would not equate such a detention with

6

1  an immigration checkpoint and as such the reasonable expectation of privacy
2  with regards to immigration regulation is violated. The resulting
3  immigration detainer should be voided as an equitable remedy for the
4  violation of 4th Amendment rights.
5
6
7          The Use of a County Detention Facility As an
8              Immigration Checkpoint is Unlawful
9             and a Resulting Immigration Detainer
10              Is Unlawful and Must be
11                 Lifted or Otherwise Stayed
12
13  An immigration inquiry at the border or at its functional equivalent, such as
14  an international airport, is deemed reasonable. U.S. vs. Ramsey (1977) 431 US
15  606, 52 L. Ed. 2d 617, 97 S. Ct. 1972. An immigration inquiry at
16  a reasonably located and fixed checkpoint is also deemed reasonable. U.S.
17  vs. Martinez-Fuerte (1976) 428 US 543, 49 L. Ed 2d 1116, 96 S. Ct
18  3074. All other immigration detention must be supported by specific and
19  articulable facts given rise to a reasonable cause to believe that the
20  person detained is deportable. U.S. vs. Brignoni-Ponce (1975) 422 US
21  873, 45 L. Ed 2d 607, 95 S. Ct 2574; U.S. vs. Sandia-Cameros
22  (9th Cir 1999) 55 F.3d 244.
23
24  The Contra Costa County Office of the Sheriff, in cooperation with the
25  United States Department of Homeland Security, have converted what is supposed to
26  be a detention facility for pretrial detainees into a border stop. The
27  only thing that is missing from the Martinez Detention Facility is a sign that
28  reads "U.S. Customs and Immigration Checkpoint". As idiotic as that may
29  sound, that would at the very least advise a detainee of the impending
30  line of questions to come and such a detainee would be made aware

7

1  of what to expect.
2
3  The fact that the court in <u>U.S. vs. Brignoni-Ponce</u> and <u>U.S. vs.</u>
4  <u>Garcia-Camacho</u> held that a "border stop" must be supported by specific
5  and articulable facts giving rise to the inquiry does not do away with the
6  fact that such "specific and articulable" facts must be gathered in a
7  lawful manner. In Contra Costa County, inmates that are of Mexican
8  appearance are singled out for immigration inquiries. This is a clear violation of
9  the doctrine of equal protection. While it may not be of any consequence
10 before this court, the California Court of Appeal in <u>People vs. Valenzuela</u> held
11 that an immigration inquiry outside of an allowable inspection setting must be
12 supported by probable cause and that probable cause can not be a single
13 factor of Mexican appearance. <u>People vs. Valenzuela</u> (1994) 28 CA4th 817,
14 33 CR2d 802.
15
16 The petitioner puts forth the claim that at booking he was not told
17 that the Martinez Detention Facility operated not only as a pretrial
18 detention facility, but also as an immigration checkpoint. Had he known that
19 fact, the petitioner would not have responded to the inquiry of his
20 citizenship status. It is clear that the immigration detainer placed on him
21 was a function of the inquiry into his citizenship status. The resulting
22 immigration detainer is unlawful and must be lifted or at the very
23 least stayed. The petitioner prays for relief.
24
25
26          The Immigration Detainer Deprives the
27          Petitioner of His 6th Amendment Right
28             to Counsel of His Choice
29
30 The 6th Amendment of the United States Constitution guarantees

8

1  a criminal defendant's right to counsel. The petitioner is in a position to
2  post bail, secure his release on bail, meet with various defense attorneys, muster
3  up his resources under his command, select counsel of his choice, and
4  move forward with his defense. However, because of the immigration
5  detainer the petitioner can not secure his release on the bail that he is
6  entitled to. This seriously impedes the petitioner's right to secure adequate
7  counsel.
8
9  The United States Supreme Court in Reynolds vs. Cochran held that
10 the deprivation of the right to counsel of choice requires reversal regardless of
11 whether in fact the defendant had a fair trial. Reynolds vs. Cochran
12 (1961) 365 U.S. 525, 5 L. Ed. 754, 81 S. Ct. 723. The California
13 court is also in accord with Reynolds vs. Cochran. People vs. Gzikowski (1982)
14 32 C.3d 580; People vs. Byoune (1966) 65 C.2d 345; People vs. Crovedi
15 (1966) 65 C.2d 199.
16
17 The immigration detainer potentially forecloses the petitioner's right to counsel
18 of choice because he is not in a position to use the resources under
19 his command to secure counsel of his own election. As an equitable
20 remedy the immigration hold must be at the very least stayed if not
21 lifted. The petitioner prays for such relief.
22
23
24             The Immigration Detaineer Deprives the
25             Petitioner of his 6th Amendment Right
26             to Have a Compulsory Process for
27             Obtaining Defense Witnesses
28
29 The petitioner puts forth the claim that because of the nature of the
30 charges against him a defense attorney or defense investigator may

1   not be able to secure the testimony of critical defense witnesses. Some
2   witnesses that are crucial to the defense can not be located because
3   the petitioner can not remember their contact information. However, if
4   the petitioner were released on bail he could with ease locate such
5   defense witnesses by site. The United States Court of Appeals for the
6   9th Circuit in Kinney vs. Lemon held that failure to permit a defendant's
7   release for purposes of aiding preparation of his defense unconstitutionally
8   interfered with due process right to a fair trial. Kinney vs. Lemon (9th
9   Cir. 1970) 425 F.2d 209. The petitioner puts forth the same claim
10   in the case at bar.

11

12   The argument presented is that the ability of an accused to prepare his
13   defense by lining up witnesses is fundamental to his chances of
14   obtaining a fair trial and the recognition of this fact underlies the
15   bail system. Stack vs. Boyle (1951) 342 U.S. 1, 72 S.Ct. 1, 96 L. Ed. 3.
16   The 6th Amendment provides a means for an accused to have a
17   compulsory process to obtain witnesses in his behalf. Washington vs. Texas
18   (1967) 388 U.S. 14, 87 S. Ct. 1920, 18 L. Ed. 2d 1019. This
19   compulsory process as a practical matter would be of little value
20   without an opportunity to contact and screen potential witnesses before
21   trial.

22

23   With an arguable unlawful immigration detainer in place, the petitioner
24   is denied the constitutional right to contact and secure defense witnesses.
25   Even if the immigration detainer was secured after a conviction
26   and was deemed to be lawful, it would still violate the petitioner's
27   right to secure witnesses if bail on the detainer was not made available.

28

29   The petitioner contends that the immigration detainer is unlawful and that
30   it deprives him of the right to secure key defense witnesses that

1  he would otherwise be able to secure had he been released on bail,
2  which is available to him. As an equitable remedy the immigration
3  hold must be at the very least stayed if not lifted. The petitioner
4  prays for such relief.
5
6
7              The Immigration Detainer Deprives the
8               Petitioner of his 8th Amendment
9                  Right to Bail that Is
10                  Available to Him
11
12  The purpose of bail is not to punish but rather to ensure the
13  future appearance of a defendant and in some cases to protect the
14  public when it is proved by clear and convincing evidence that the
15  arrestee has presented an identifiable and articulable threat to
16  a specific individual or the community. U.S. v. Salerno (1987)
17  481 U.S. 739, 107 S. Ct. 2095. The petitioner in the case at
18  bar presents the argument that constructive custody of the petitioner
19  by the United States Department of Homeland Security under an immigration
20  detainer without an own recognizance release considering that the state
21  already demands of him bail already, is unconstitutional under the 8th
22  Amendment. The court in U.S. v. Salerno held that to determine
23  whether the Government's conditions of detention are excessive for 8th
24  Amendment purposes there must be a balancing test between the
25  Government's detention against the interest the Government seeks to
26  protect.
27
28  The petitioner is bound to provide bail to secure his release on the
29  state charges before him. As it stands now, the petitioner can not
30  secure his release under bail in the state case because of the

11

immigration detainer. This serves no Government interest, works to
deprive the petitioner of due process, and furthermore serves to strip the
petitioner of his right to bail at any level.

As a bare equitable remedy the immigration detainer must be stayed
and the petitioner allowed to post bail in the state case and secure
his release. The petitioner prays for such relief.

## Concluding Statement

The petitioner seeks to have the court, for the reasons stated in this
writ of habeas corpus, lift the immigration detainer placed on the
petitioner by the United States Department of Homeland Security. If the
court is not inclined to grant such relief then the petitioner to either
stay the detainer or grant the petitioner a release on his own recognizance
specific to the immigration detainer.

With regards to the relief sought, there is no administrative review
available to be exhausted prior to seeking relief from this court. Also, relief
is not available from any state court on the issue the petitioner seeks relief
from. The petitioner has not seeked relief from this court on the issue at
bar in any other writ of habeas corpus.

## Verification

I, the undersigned, say I am the petitioner in this action. I
declare under penalty of perjury under the laws of the United
States of America that the foregoing statements are true

1   and correct, except as to the matters that are stated on my
2   information and belief, and as to those matters, I believe them
3   to be true.
4
5
6   Dated: May 12th 2008
7
8                                   Respectfully submitted,
9
10
11                                  Josue Luis Ponce Legaspi
12                                  Josue Luis Ponce-Legaspi
13                                  Petitioner
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

13

$ 06.80°

MAILED FROM ZIP CODE 94553

UNITED STATES POSTAGE

Bernardo Mendia
20070101011-A30
M.D.F.
1000 Ward Street
Martinez, CA 94553

RECEIVED

JUL -7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California
c/o Office of the Clerk
450 Golden Gate Avenue
San Francisco, CA 94102

COUNTY JAIL
INMATE MAIL